UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION



NADIA REGISTE, individually, and as mother,
next friend, and natural guardian of and [on]
behalf of her minor children N and N Toussaint,

      Plaintiff,

vs.                                                                          Case No. 3:12-cv-1110-HES-JRK

LINKAMERICA EXPRESS, INC., ODAAT
TRUCKING, INC., LINDA RINGQUIST,
individually and as an agent and employee of
Linkamerica Express, Inc. and Odaat Trucking,
Inc., and JOHN DOE INDIVIDUALS AND
ENTITIES 1–3,

      Defendants.

_____/

## ORDER

This cause comes before the Court on Plaintiffs' "Motion for New Trial and Motion for Judgment Notwithstanding the Verdict Pursuant to F.R.C.P. 59 and 50" (Doc. 150, filed Dec. 19, 2014); and Defendant's Response in opposition thereto (Doc. 158, filed Jan. 16, 2015).

## I. BACKGROUND

On the evening of October 23, 2009, Nadia Registe, her two minor children N and N Toussaint, and her cousin Shorna Charles were driving southbound on I-75 in Ms. Registe's black minivan. The vehicle was traveling in the middle lane of the three-lane highway near Lake City, Florida. Another driver, Shawn Orr, was driving recklessly in the left lane and veered into the middle lane, which caused Ms. Registe to lose control of her vehicle. She swerved onto the right shoulder, then steered back across the three lanes of traffic and hit the left guardrail. The minivan then spun

back onto the roadway and came to rest approximately perpendicular to the roadway in the middle lane, with the front of the vehicle facing the right shoulder. Ms. Registe was unable to restart the vehicle, so Ms. Charles exited the minivan and made it safely to the right shoulder of the highway. Ms. Registe stayed behind to get her two children out of their car seats. This collision did not result in any injuries to the minivan's occupants.

By this time it was fairly dark outside. While Ms. Registe was engaged in getting her daughter out of her car seat, Linda Ringquist, driving an 18-wheeler tractor trailer southbound in the middle lane, came upon Ms. Registe's disabled vehicle. Ms. Ringquist testified that she first attempted to steer into the right lane to avoid the minivan, but that she saw Ms. Charles standing on the right shoulder and was afraid to hit her. Thus, Ms. Ringquist steered left to merge into the left lane. However, Ms. Ringquist did not have enough time to fully merge into the left lane, and she struck the right rear corner of Ms. Registe's vehicle before coming to a stop. This collision resulted in physical injuries to Ms. Registe and her daughter.

Thereafter, Ms. Registe filed suit against several defendants individually and on behalf of her children, alleging that Ms. Ringquist was negligent in the operation of her tractor trailer, which caused injuries to herself and to her children.[1] A jury trial was held the week of July 7, 2014, but this Court was forced to declare a mistrial. A second jury trial was held the week of November 17, 2014, in which a unanimous twelve-person jury returned a verdict in favor of Defendant, having found that Ms. Ringquist was not negligent in the operation of her tractor trailer.

After the trial, Plaintiffs timely filed the present motion. In the motion, Plaintiffs argue that

---

[1] The parties later agreed that only LinkAmerica Express, Inc. should be considered the defendant in this case based on the doctrine of vicarious liability. Thus, this Court will refer to "Defendant" in the singular throughout.

they are entitled to either judgment notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50 or, in the alternative, to a new trial pursuant to Federal Rule of Civil Procedure 59, based on certain evidentiary and jury instruction errors this Court allegedly made. Doc. 150. Defendant asserts in its response that this Court's decisions on these particular evidentiary and jury instruction issues were correct, but even if they were not, Plaintiffs still cannot meet the high burden required to overturn a unanimous jury verdict for either a judgment notwithstanding the verdict or a new trial. Doc. 158.

## II. ANALYSIS

Plaintiffs raise four issues in their motion, two of which are evidentiary in nature, and two of which are related to the jury instructions. First, Plaintiffs argue that certain traffic statistics were improperly excluded from being admitted into evidence. Doc. 150-1 at 5-7. Second, Plaintiffs argue that the CDL Manual was improperly excluded from being admitted into evidence. *Id.* at 7-8. Third, Plaintiffs argue that this Court's refusal to include a jury instruction on negligence per se, which Plaintiffs had requested, was erroneous. *Id.* at 9-11. Fourth, Plaintiffs argue that this Court's refusal to include jury instructions on various Florida traffic statutes and federal motor carrier regulations, which Plaintiffs had requested, was also erroneous. *Id.*

### A. Motion for Judgment Notwithstanding the Verdict

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law (otherwise known as a motion for directed verdict) and motions for judgment notwithstanding the verdict. The Eleventh Circuit has explained that "[j]udgment as a matter of law is appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 246 F.3d 1241, 1246 (11th Cir.

3

2001). In other words, if the jury had a " 'legally sufficient evidentiary basis to find' " for the non-moving party on a controlling issue, then the moving party's motion must fail. *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)(1)). Further, the Court is not allowed to "make credibility determinations or weigh the evidence. . . . Instead, [the court] consider[s] all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party." *Id.* (citations and internal quotation marks omitted).

Procedurally, "a motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). The motion may encompass the entire case, or it may encompass only a particular issue, claim, or defense. *See id.* R. 50(a)(1). If the court denies a party's motion for judgment as a matter of law, the movant has twenty-eight (28) days after the entry of judgment to file a renewed motion for judgment as a matter of law "and may include an alternative or joint request for a new trial under Rule 59." *Id.* R. 50(b).

The Eleventh Circuit has expressly stated that "[a] motion for directed verdict at the close of the evidence is a prerequisite to the granting of a judgment n.o.v." *Nat'l Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1548 (11th Cir. 1986).[2] Further, "Rule 50 motions must be made on the record." *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289 (11th Cir. 1998). The Eleventh Circuit has explained that the grounds raised in a Rule 50(a) motion must be "closely related" to those raised in a Rule 50(b) motion. *Id.* If the grounds raised in a Rule 50(b) motion "vary greatly" from those

---

[2] The Federal Rules of Civil Procedure have since been updated to allow for a Rule 50(a) motion to be made "at any time before the case is submitted to the jury," Fed. R. Civ. P. 50(a)(2), but the underlying concept remains the same: A Rule 50(a) motion must first be made at trial, otherwise a court may not consider a Rule 50(b) motion made post-judgment. *See Crawford v. Andrew Sys., Inc.*, 39 F.3d 1151, 1153-54 (11th Cir. 1994).

4

raised in a Rule 50(a) motion, "then a trial judge may not rely on the new grounds to set aside the jury's verdict." *Id.* This is because the non-movant must be "afforded his Seventh Amendment right to cure evidentiary deficiencies before his case [goes] to the jury." *Id.*; *see also Nat'l Indus., Inc.*, 781 F.2d at 1549 ("The reason for requiring a motion for directed verdict at the close of the evidence is to avoid making a trap of the motion for judgment notwithstanding the verdict, either at the trial stage or on appeal." (citation and internal quotation marks omitted)). Yet this rule is a "liberal" one, and the focus is on whether all parties had sufficient notice of the movant's concern, even if it was not expressly articulated in the Rule 50(a) motion. *See Nat'l Indus., Inc.*, 781 F.2d at 1549-50 (citation omitted).

Using these standards and requirements as a guide, this Court turns to the present case. Plaintiffs made an oral motion at the beginning of the charge conference; Plaintiffs did not state what type of motion they were making, and it was not labeled as a Rule 50 motion. Substantively, however, it may be considered a motion for judgment as a matter of law on a particular issue. Specifically, Plaintiffs argued that there was no evidence in this case that demonstrated Ms. Registe's own negligence in causing the accident. Doc. 156 at 213:15-24. Defendant objected and argued that there was sufficient evidence presented at trial that could lead a reasonable juror to conclude that Ms. Registe was herself negligent in some way. *Id.* at 214:1-21. This Court agreed with Defendant and denied Plaintiffs' motion. *Id.* at 214:22-215:1.

Later during the charge conference, during the discussion of jury instructions, Plaintiffs requested that this Court charge the jury on certain Florida traffic statutes and federal motor carrier regulations. *Id.* at 222:24-227:24. Plaintiffs argued that it was appropriate to include certain statutes and regulations in the jury instructions and to instruct the jury that violation of said statutes and

5

regulations is evidence of negligence or constitutes negligence per se. *Id.* at 224:16-225:21. Defendant objected and argued that inclusion of the statutes and regulations in the jury instructions was improper and irrelevant, and that sufficient evidence concerning Ms. Ringquist's driving was already presented to the jury and could also be raised in closing arguments. *Id.* at 223:9-19, 224:8-15, 225:14-226:24. This Court sustained Defendant's objection but told the parties that they could argue all the facts they wanted to during closing arguments. *Id.* at 227:5-7.

The question for this Court is whether the issues raised in Plaintiffs' motion for judgment notwithstanding the verdict are "closely related" to those raised at the charge conference. *See Ross,* 146 F.3d at 1289; *Nat'l Indus., Inc.,* 781 F.2d at 1549-50. Upon review of the record in this case, this Court finds that Plaintiffs did not raise the evidentiary issues concerning either the traffic statistics or the CDL Manual in a substantive motion at the close of evidence, at the charge conference, or otherwise before the case was submitted to the jury for deliberation. Plaintiffs have thus abandoned those claims for purposes of the present motion for judgment notwithstanding the verdict.[3] *See, e.g.,* *Nat'l Indus., Inc.,* 781 F.2d at 1548-49. However, this Court finds that although Plaintiffs did not formally raise the jury instructions issue in a Rule 50(a) motion, Plaintiffs have not abandoned this claim because the issue was raised and objected to later on during the charge conference when the parties were reviewing the proposed jury instructions. Doc. 156 at 222:24-227:24. This holding accords with the "liberal view" the Eleventh Circuit has taken in considering Rule 50 motions. *See, e.g., Nat'l Indus., Inc.,* 781 F.2d at 1549. The Eleventh Circuit focuses on whether the district court and the non-moving party had been put on notice of the claimed deficiency by the moving party and

---

[3] Plaintiffs have also abandoned the claim that Defendant failed to submit sufficient evidence of Ms. Registe's own negligence in causing the accident, as Plaintiffs did not raise this issue in their Rule 50(b) motion.

whether the non-movant was able to respond before jury deliberations commenced. *See id.* (citing *Quinn v. Sw. Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979)). "There is nothing in the record to suggest an ambush or sandbagging" on the jury instructions issue, even though it was not properly raised in a formal Rule 50(a) motion by Plaintiffs. *See id.*

Thus, this Court will now consider the merits of Plaintiffs' claim that this Court committed error by declining to include jury instructions on (1) negligence per se and (2) various Florida traffic statutes and federal motor carrier regulations. Essentially, Plaintiffs' argument is that the failure to include these particular instructions seriously prejudiced their case, and that if this Court had included them, then "the evidence [would have been] so overwhelmingly in favor of the moving party that a reasonable jury could not [have] arrive[d] at a contrary verdict." *Middlebrooks*, 246 F.3d at 1246.

As to the first issue—an instruction on negligence per se—this Court continues to hold that it was proper not to include this instruction. This Court instructed the jury on the concept of negligence, and that instruction sufficiently encompassed the issues raised in this case. In fact, the Florida Supreme Court has expressly stated that traffic violations are only evidence of negligence and cannot be considered as negligence per se. *See deJesus v. Seaboard Coast Line R.R. Co.*, 281 So. 2d 198, 200-01 (Fla. 1973) ("A violation of any statute, however, is not necessarily negligence per se; for some, a violation may be only evidence of negligence. . . . In this category also falls violations of traffic regulations, which this Court has consistently distinguished from other penal statutes and ordinances."). The "Notes on Use" in the pertinent Florida standard jury instructions, to which Plaintiffs themselves cited in their proposed instructions, also state that an instruction on negligence per se "should not be given in a case involving violation of a traffic regulation prescribed

by statute or ordinance or in other cases in which the violation is only evidence of negligence." *See* Doc. 107 at 18 (quoting Florida Standard Jury Instructions in Civil Cases § 401.8). Further, one of Plaintiffs' own proposed instructions states: "Violation of the Federal Motor Carrier Regulations that I will read to you is evidence of negligence. It is not, however, conclusive evidence of negligence." *Id.* at 19. Thus, this Court was correct in declining to instruct the jury on negligence per se in this case.

As to the second issue—failure to include various Florida traffic statutes and federal motor carrier regulations—Plaintiffs cite to no case law or procedural rule in their motion that would require this Court to include the statutes and regulations. Plaintiffs do not cite to persuasive authority that this Court might consider in reviewing its previous ruling, either. During the discussion of this issue at the charge conference, Plaintiffs' counsel stated that they are used to practicing in Georgia and implied that Georgia courts regularly include statutes and regulations in jury instructions, so this Court should do likewise. Doc. 156 at 224:16-225:8. This argument is not persuasive. This Court continues to hold that the Florida statutes and federal regulations are superfluous and/or irrelevant. Several of the instructions cover topics that are not relevant to this case and were not properly before the jury, such as driving on the right side of the roadway, following too closely, hours of service rules for truck drivers, and ill or fatigued operator rules. Doc. 107 at 20-21, 28-29. Other proposed instructions simply state general underlying concepts regarding the applicability, scope, and enforcement of federal motor carrier regulations and served no purpose in this case; these instructions are also irrelevant. *Id.* at 25-27. Lastly, certain proposed instructions concern statutes describing unlawful speed, special hazards, and careless driving; these concepts have relevance to this case, but all were subsumed into the standard negligence instruction that this Court gave to the

jury. *Id.* at 22-24; Doc. 148 at 12. In total, this Court believes that including Plaintiffs' proposed instructions on Florida traffic statutes and federal motor carrier regulations would likely have caused confusion to the jury as to the proper issues in this case and may have led to an unfair inference that Ms. Ringquist in fact committed a violation of one or more of the listed provisions.

Plaintiffs have failed to demonstrate that if this Court had included these particular instructions, then "the evidence [was] so overwhelmingly in favor of the moving party that a reasonable jury could not [have] arrive[d] at a contrary verdict." *Middlebrooks*, 246 F.3d at 1246. A plethora of evidence was introduced at trial on the subject of Ms. Ringquist's actions or lack thereof, and the jury had a " 'legally sufficient evidentiary basis to find' " for Defendant on the issue of negligence. *Lamonica*, 711 F.3d at 1312 (quoting Fed. R. Civ. P. 50(a)(1)). This Court's refusal to include an instruction on negligence per se was correct, and this Court's refusal to include instructions on various Florida traffic statutes and federal motor carrier regulations did not singularly determine the outcome of Plaintiffs' case.

**B. Motion for New Trial**

Federal Rule of Civil Procedure 59(a) governs motions for new trial and states that a court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Supreme Court has explained that a motion for new trial may be granted if based on a claim that (1) "the verdict is against the weight of the evidence"; (2) "the damages are excessive, or that, for other reasons, the trial was not fair to the party moving"; or (3) "raise[s] questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

### 1. Evidentiary Issues

The Eleventh Circuit has stated that "[n]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lamonica*, 711 F.3d at 1312-13 (citation and internal quotation marks omitted). However, unlike a motion for judgment as a matter of law, this Court may weigh the evidence when deciding whether to grant a motion for new trial. *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988). Yet not every evidentiary error requires reversal; "a new trial is warranted only where the error has caused substantial prejudice to the affected party." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004).

Plaintiffs argue that this Court's rulings that the traffic statistics and the CDL Manual could not be admitted into evidence were erroneous and caused them substantial prejudice. Doc. 150-1 at 5-8. Plaintiffs assert that they would have been able to impeach Ms. Ringquist at trial if this evidence had been allowed. *See id.*

### a. Traffic Statistics

The first evidentiary issue concerns certified traffic statistics from the Florida Department of Transportation. These statistics show the number of vehicles that passed by a measuring site (near the site of the wreck) over the course of the hour prior to the wreck, the hour of the wreck, and the hour after the wreck. Doc. 150-1 at 5. Thus, these statistics demonstrate the average number of seconds that a vehicle passed by the measuring site over the course of one hour. *Id.* Plaintiffs argue that this evidence would have impeached Ms. Ringquist because she testified that in the moments before the accident there were no vehicles to the left or the right of her, as well as no vehicles in front of her tractor trailer or in front of Ms. Registe's disabled van, which Plaintiffs allege is "absurd or

made up." *Id.*; *see also* Doc. 154 at 103:5-23 (Ms. Ringquist's relevant testimony).

Before the first trial that resulted in a mistrial, this Court considered and ruled on several pre-trial motions. As relevant here, Plaintiffs listed the traffic statistics as Exhibit 27 in their exhibit list, and they listed the sponsoring witness as Witness 38 in their witness list. Doc. 70-1; Doc. 70-3. Defendant filed a motion in limine to exclude this evidence, arguing that these statistics were produced after the close of discovery and that, in any event, the statistics were irrelevant and/or misleading. Doc. 71 at 10. Plaintiffs filed a response to Defendant's motion, explaining why Plaintiffs believed the traffic statistics were relevant and stating that they intended to use the evidence for impeachment purposes and during closing arguments. Doc. 78 at 20-21. This Court granted Defendant's motion to exclude this evidence in a pre-trial order. Doc. 88. Nevertheless, Plaintiffs' counsel raised the issue of the admissibility of the traffic statistics during the mistrial. *See* Doc. 125 at 227:17-232:14. There was an entire discussion about the traffic statistics being used to impeach Ms. Ringquist, and both parties provided their respective arguments to this Court. *See id.* This Court ruled that it would wait until Ms. Ringquist got on the stand to testify to make a final decision, but that this Court seriously doubted that it would let in the evidence. *Id.* at 229:24-230:1, 230:23-25, 231:23-232:13. The reason that this Court seriously doubted it would let in the evidence is because the statistics are too imprecise. They show the average number of seconds that a vehicle passed by the measuring site over the course of one hour; they do not show the average number of seconds that a vehicle passed by the measuring site "within a minute or two" surrounding the crash. *Id.* at 231:4-232:13. This Court hypothesized that it was entirely possible that the traffic volume was slow around the time of the crash and then picked up heavily later in the hour, which would skew the average. *See id.*

11

As it turns out, Ms. Ringquist never testified during the first trial because this Court declared a mistrial before it was her turn to testify, and thus, this Court never made a definitive ruling on the traffic statistics. Yet, at the second trial, Plaintiffs never raised the issue of the traffic statistics; the sponsoring witness was not even listed in Plaintiffs' final witness list, although the exhibit was still listed in Plaintiffs' final exhibit list. Doc. 134; Doc. 144. Defendant argues that Plaintiffs did not preserve error on this issue because no offer of proof was made at the second trial. Doc. 158, ¶ 36 (citing *Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC*, 253 F. App'x 861, 864 (11th Cir. 2007)). However, Plaintiffs appear to believe that error was preserved based on this Court's order excluding the evidence and testimony before the mistrial. Doc. 150-1 at 5 ("Mr. Bentz with the Florida Department of Transportation, a witness the Court ruled could not testify in pre-trial motions . . . ."); *id.* at 6 ("Plaintiffs' argument to the Court in the pre-trial motions, and at the mistrial . . . .").

Defendant is correct that, generally, a party preserves error by making a sufficient offer of proof at trial. *See, e.g., Lanier Constr., Inc.*, 253 F. App'x at 864 (The Eleventh Circuit "will not even consider the propriety of the decision to exclude the evidence at issue, if no offer of proof was made at trial."). However, Federal Rule of Evidence 103 does not require the offer of proof to be made at trial; error may be preserved based on a court's "in limine" ruling. Subsection (b) states, "Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b). The advisory committee's note to previous amendments to Rule 103 confirms this was the intended result. *See* Fed. R. Evid. 103 advisory committee's note (2000). Further, the Eleventh Circuit has held that a party can properly preserve its objection to a district court's exclusion of evidence based on pre-trial motions in certain circumstances. *See, e.g., Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337,

1349-50 (11th Cir. 2007). Importantly, "[i]f the ruling excludes evidence, a party [must] inform[]

the court of its substance by an offer of proof, unless the substance was apparent from the context."

Fed. R. Evid. 103(a)(2). If this requirement is satisfied, "[o]nce the court makes a definitive ruling

excluding the evidence, a party need not renew its objection or offer of evidence to preserve the issue

on appeal." *Proctor*, 494 F.3d at 1350. In *Proctor*, the party objecting to the potential exclusion of

certain evidence "objected and proffered forty-one pages of deposition testimony and two affidavits

from seven fact witnesses relating" to the evidence. *Id.* The district court granted the opposing

party's motion in limine, and the Eleventh Circuit found that the objecting party had properly

preserved its objection. *See id.* at 1349-50.

Admittedly, in this case Plaintiffs proffered much less evidence than the objecting party did

in *Proctor*. In their response to Defendant's motion in limine to exclude, *inter alia*, the evidence and

testimony concerning the traffic statistics, Plaintiffs included a paragraph that explained what this

evidence demonstrated, why they wished to introduce this evidence, why they believed this evidence

was relevant, when they intended to introduce this evidence at trial, and cited to Federal Rules of

Evidence 401-403. Doc. 78 at 20-21. This Court felt fully informed on this particular evidentiary

issue based on these pre-trial filings. After consideration, it granted Defendant's motion as to this

evidence, as it found the evidence irrelevant and misleading. Doc. 88. Further, this Court did not

require the parties to resubmit any pre-trial motions before the second trial; this Court's various pre-

trial rulings carried over. However, while it is true that this Court made comments during the mistrial

that it might reconsider its ruling on this issue once Ms. Ringquist took the stand, these comments

*did not* necessarily carry over to the second trial. As Defendant itself argues, " '[a] retrial following

a mistrial is both in purpose and effect a new trial. Accordingly, objections made at the aborted trial

have no bearing on the retrial, as the two are entirely separate affairs.' " Doc. 158, ¶ 47 n.3 (quoting *United States v. Palmer*, 122 F.3d 215, 221 (5th Cir. 1997)). It was reasonable and correct for Plaintiffs to believe that error had been preserved based on this Court's original pre-trial ruling, and their failure to raise this issue during the second trial does not mean error was not preserved.

Proceeding to the merits, this Court continues to hold that the traffic statistics are irrelevant under Federal Rule of Evidence 401, and even if they are relevant, this Court would still exclude them under Rule 403, as their "probative value is substantially outweighed by a danger of . . . unfair prejudice . . . [or] misleading the jury." As previously explained, these statistics demonstrate the average number of seconds that a vehicle passed by the measuring site over the course of one hour; they do not show the average number of seconds that a vehicle passed by the measuring site within a minute or two surrounding the crash. Traffic flow is not a constant average, and this evidence does nothing to aid the jury in determining the traffic flow *at the time of the crash*, which is the only relevant information in this case. Plaintiffs argue that they could and would have impeached Ms. Ringquist with this evidence because she testified during her deposition and at trial that there were no vehicles surrounding her or in front of her at the time of the crash. Plaintiffs continue to believe that this evidence contradicts her "absurd or made up" testimony, yet it does no such thing. Ms. Ringquist only testified about the traffic in the few seconds before the crash; she did not testify that the traffic flow was slow over the course of the entire hour.

Even assuming that this Court committed error and that the evidence should have been admitted, there was still eye-witness testimony presented at trial that described the traffic flow in the minutes after the crash as heavy. Doc. 154 at 67:12-21 (testimony of C. Thomas). Further, there was ample evidence presented at trial from which the jury could return a verdict in Defendant's favor.

There was eye-witness testimony presented at trial that described the traffic flow before and at the time of the first accident with Mr. Orr as light. *Id.* at 44:25-45:6, 58:13-19 (testimony of M. Haegele). There was evidence presented that it was fairly dark at the time of the first accident with Mr. Orr, *id.* at 49:3-18; that it was dark at the time of the second accident with Ms. Ringquist, *id.* at 102:19-20, 103:3-4; that Ms. Ringquist was driving within the speed limit on cruise control in the middle lane before the time before the crash, *id.* at 101:25-102:7; that the tractor trailer's headlights (or some other light) illuminated the disabled van and that she immediately started braking, *id.* at 99:17-101:24, 103:24-106:11; that she attempted to steer to the right to avoid hitting the van, but she saw Ms. Charles standing on the shoulder of the highway, so she steered back and attempted to merge into the left lane, *id.* at 106:12-107:20; and that she was unable to fully merge into the left lane before hitting the van, *id.* at 107:21-25. Even if Plaintiffs had been allowed to attempt to impeach Ms. Ringquist with the traffic statistics, it is reasonable that the jury still would have chosen to believe Mr. Haegele and Ms. Ringquist. For example, the jury could have found that Ms. Ringquist's testimony about beginning to steer into the right lane and then into the left lane actually comported with her testimony that there were no vehicles to the sides of her or in front of her, otherwise she might not have attempted to steer into the right or left lanes at all for fear of striking another vehicle already in those lanes.

In sum, this Court was correct in its ruling that the traffic statistics are irrelevant and would be misleading to the jury. Even assuming this ruling was incorrect, this error did not cause "substantial prejudice" to Plaintiffs, because there was still testimonial evidence presented at trial that described the traffic flow in the minutes after the second crash as heavy, and the jury had a reasonable basis on which to believe Ms. Ringquist's testimony. *See Peat, Inc.*, 378 F.3d at 1162.

15

Lastly, Plaintiffs have failed to demonstrate that the verdict was against the great—not simply the greater—weight of the evidence, regardless of whether this evidence was properly excluded.

### b. Florida CDL Manual

Next, this Court will consider Plaintiffs' second evidentiary issue concerning the Florida CDL Manual ("CDL Manual" or "manual"). The CDL Manual is used as a guide by those who obtain a commercial driver's license and operate commercial motor vehicles in Florida. It contains information on various Florida laws and federal regulations governing the operation of commercial motor vehicles. Plaintiffs listed the 2009 Florida CDL Manual as Exhibit 25 in their exhibit list, but the admission or exclusion of this evidence was not decided in any pre-trial ruling. Doc. 70-3. At the second trial, Plaintiffs only offered the entire CDL Manual into evidence when Ms. Ringquist was on the stand. Doc. 154 at 96:7-9. Defendant objected, and at the subsequent sidebar, Defendant's counsel again objected to its introduction as hearsay. *Id.* at 96:13-97:9. At first, Plaintiffs' counsel stated that he sought to admit the entire manual into evidence, explaining that he wanted to ask Ms. Ringquist "about various portions about refreshing her memory and how truck drivers are tested and how they're expected to operate their vehicles." *Id.* at 96:25-97:3. When Defendant's counsel asked if he was just going to refresh Ms. Ringquist's recollection with the manual, Plaintiffs' counsel stated in response, "I'll move to admit it as an exhibit. *If the court doesn't want it to go out with the jury, that's fine with me.* But I want it as part of the evidence in this case." *Id.* at 97:10-14 (emphasis added). This Court then ruled that it was not going to let the entire CDL Manual into evidence, but that the manual could be used to refresh the recollection of a witness. *Id.* at 97:14-21. Throughout the rest of the trial, Plaintiffs attempted to use certain pages of the manual to refresh various witnesses' recollections about headlight limitations and braking capabilities of a tractor trailer, but

16

Plaintiffs never attempted to admit the entire manual into evidence again. *See* Doc. 153 at 181:4-185:8 (testimony of H. Weaver); Doc. 154 at 98:20-101:8 (testimony of L. Ringquist); *id.* at 163:5-166:7 (testimony of C. Hackler); *id.* at 233:12-236:12 (testimony of T. Langley).

This Court holds that Plaintiffs have not properly preserved error on the admission of the entire CDL Manual into evidence. Plaintiffs only attempted to make an offer of proof on one occasion as to why the entire CDL Manual should be admitted into evidence, and at that time, Plaintiffs failed to lay the proper foundation (1) for the relevancy of the entire manual, and (2) for why the manual was not hearsay or was an exception to hearsay. *See* Doc. 154 at 95:10-98:10. Further, Plaintiffs' counsel stated, "If the court doesn't want it to go out with the jury, that's fine with me." *Id.* at 97:10-14. Thus, not only did Plaintiffs fail to clearly articulate their objection on the record to this Court's determination that the CDL Manual was irrelevant hearsay and should not be admitted into evidence, the record indicates that Plaintiffs' counsel agreed with this Court's evidentiary ruling.

To the extent that Plaintiffs also challenge this Court's ruling that relevant individual pages of the CDL Manual could not be admitted into evidence, Plaintiffs again failed to properly object and explain how the individual pages were not hearsay or were exceptions to hearsay. *See* Doc. 153 at 181:4-185:8; Doc. 154 at 95:10-98:10; *id.* at 163:5-166:7; *id.* at 233:12-236:12. In any event, the information contained in the few relevant pages of the manual made its way into evidence, as different witnesses testified to and confirmed the contents of those pages. *See* Doc. 154 at 98:20-101:8 (using page 37 of the CDL Manual to refresh Ms. Ringquist's recollection before asking her about headlight limitations); *id.* at 233:12-236:12 (using page 27 of the CDL Manual to refresh Mr. Langley's recollection before asking him about braking capabilities).

In conclusion, Plaintiffs did not properly preserve error on the admissibility of the entire CDL Manual. And even assuming Plaintiffs did preserve error, this Court was correct in refusing to admit the manual into evidence. The vast majority of the material contained therein is irrelevant, and the manual constitutes hearsay without an exception; the few relevant pages still constitute hearsay, and Plaintiffs failed to argue otherwise. Lastly, the information contained in the few relevant pages of the manual did, in fact, come into evidence through witness testimony. Therefore, assuming further that this Court committed error, this error did not cause "substantial prejudice" to Plaintiffs. *Peat, Inc.*, 378 F.3d at 1162.

### 2. Jury Instructions

When a party moves for a new trial based on an alleged error in the jury instructions, the party must demonstrate that "(1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." *Lamonica*, 711 F.3d at 1309 (citation and internal quotation marks omitted).

This Court analyzed the alleged jury instructions errors above in its discussion of Plaintiffs' motion for judgment notwithstanding the verdict. *See supra* Part II.A. As previously mentioned, violation of a Florida traffic statute or federal motor carrier regulation only constitutes evidence of negligence, not negligence per se, and an instruction on negligence per se would have been improper. *See deJesus*, 281 So. 2d at 200-01. Thus, Plaintiffs' claim that this Court should have included an instruction on negligence per se must fail, because the requested instruction does not correctly state the law. *See Lamonica*, 711 F.3d at 1309.

As to the second issue—instructions on various Florida traffic statutes and federal motor

carrier regulations—it is (obviously) true that the requested instructions correctly stated the law. As this Court explained in the previous section, however, most of Plaintiffs' proposed instructions on traffic statutes and federal regulations are irrelevant to this case and are not concepts that were properly before the jury. Three of Plaintiffs' proposed instructions on traffic statutes concerning unlawful speed, special hazards, and careless driving are concepts at issue in this case, but these concepts were all subsumed into the standard instruction on negligence that this Court gave. *See* Doc. 107 at 22-24; Doc. 148 at 12. The issue in this case is fairly straightforward: Was Ms. Ringquist negligent in the operation of her tractor trailer, thereby causing the accident that resulted in injuries to Plaintiffs? *See* Doc. 148 at 9. The question of whether to include the three relevant statutes in the jury instructions—all of which expressly state that a violation is only evidence of negligence—was within the sound discretion of this Court. The jury was properly instructed on the concept of negligence, and Plaintiffs have failed to demonstrate how this Court's refusal to include these proposed instructions caused them "prejudicial harm" besides the fact that the jury returned a verdict for Defendant. Further, as previously mentioned, this Court believes that including these statutes and regulations would have caused confusion to the jury as to the proper issues in this case or may have led to an unfair inference that Ms. Ringquist in fact violated one of the listed provisions.

## III. CONCLUSION

Plaintiffs state that they "believe that this case was a close case based on the evidence actually presented to the jury, and . . . that the evidence that was excluded and the charges that were not given to the jury at the end of the case . . . had a material, greater and great weight of the evidence impact that was detrimental to" Plaintiffs. Doc. 150-1 at 11. This Court disagrees for the reasons discussed above. Moreover, even assuming (1) that the traffic statistics are relevant; (2) that

Plaintiffs preserved error on the admission of the CDL Manual; (3) that the CDL Manual is relevant and is not hearsay; and (4) that all of Plaintiffs' requested jury instructions are relevant to the issues in this case, this Court continues to hold that the verdict was not against the great weight of the evidence. *See Lamonica*, 711 F.3d at 1299. There was ample evidence presented at trial from which the jury could reasonably return a verdict for Defendant. Therefore, this Court will not overturn the jury's unanimous verdict.

ACCORDINGLY, it is hereby **ORDERED** and **ADJUDGED**:

1. Plaintiffs' "Motion for New Trial and Motion for Judgment Notwithstanding the Verdict Pursuant to F.R.C.P. 59 and 50" (Doc. 150, filed Dec. 19, 2014) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this /8th day of March, 2015.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
Gary M. Cooper, Esq.
Jay C. Howell, Esq.
Terry D. Jackson, Esq.
Adolfo R. Rodriguez, Jr., Esq.
Alisa W. Ellenburg, Esq.
Leonard Thomas Hackett, Esq.
Terry D. Dixon, Esq.
Wilson C. Aurbach, Esq.